# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

### Case No. _____

JOHN STEPHENS,

   *Plaintiff*,

 vs.

3M COMPANY (f/k/a Minnesota Mining and
Manufacturing Co.); AGC CHEMICALS
AMERICAS INC.; AGC, INC. (f/k/a Asahi
Glass Co., Ltd.); ANGUS INTERNATIONAL
SAFETY GROUP, LTD; ARCHROMA
MANAGEMENT, LLC; ARCHROMA U.S., INC.;
ARKEMA, INC.; BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT COMPANY;
CARRIER GLOBAL CORPORATION; CENTRAL
SPRINKLER, LLC; CHEMDESIGN PRODUCTS,
INC.; CHEMGUARD, INC.; CHEMICALS INC.;
CHUBB FIRE, LTD.; CLARIANT CORPORATION;
CORTEVA, INC.; DEEPWATER CHEMICALS,
INC.; JOHN DOE DEFENDANTS 1-49; DUPONT
DE NEMOURS, INC.; DYNAX CORPORATION;
E. I. DUPONT DE NEMOURS AND COMPANY;
FIRE PRODUCTS GP HOLDING, LLC; JOHNSON
CONTROLS INTERNATIONAL, PLC; KIDDE PLC,
INC.; NATION FORD CHEMICAL COMPANY;
NATIONAL FOAM, INC.; RAYTHEON TECHNOLOGIES
CORPORATION (f/k/a United Technologies Corporation);
THE CHEMOURS COMPANY; THE CHEMOURS
COMPANY FC, LLC; TYCO FIRE PRODUCTS LP; and UTC
FIRE & SECURITY AMERICAS CORPORATION, INC.,

   *Defendants*.

_____/

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, to the United States District Court for the Middle District of Florida. As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff, John Stephens, seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foams ("AFFF"), which Plaintiff alleges were used in firefighting activities, thereby causing injury to Plaintiff.

2.      Specifically, Plaintiff alleges that per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), were contained in Defendants' AFFF.  (DE 1-1, Compl. ¶ 4). Moreover, Plaintiff expressly alleges that he "regularly handled and used AFFF during training exercises and firefighting activities and often cleaned up spills of AFFF" while serving in the United States Navy.  (*Id.* ¶¶ 1, 73; *see also*, *e.g.*, *id.* ¶¶ 10-12).

3.    AFFF sold to and used by the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec").  Thus, to the extent that Plaintiff allegedly was exposed in military settings to PFAS from AFFF manufactured by a select group of suppliers (including Tyco), those PFAS derived from MilSpec AFFF.  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), Tyco claims immunity from tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.    This action was filed on May 23, 2023 in the Circuit Court of the Fourth Judicial District in and for Duval County, Florida, bearing Case No. 16-2023-CA-008891-XXXX-MA.  (DE 1-1, Complaint).

5.    Tyco was served on June 23, 2023.  Removal is timely under 28 U.S.C. § 1446(b).

3

6.     In accordance with Local Rule 1.06(b), Tyco is filing with this Notice of Removal copies of all process, pleadings, orders, and other papers on file in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida.  (DE 1-1; DE 1-2; DE 1-3).

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 89(b) and 1441(a) because the Circuit Court of the Fourth Judicial District in and for Duval County, Florida, is located within the Middle District of Florida.

8.     Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, *1-2 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

9.     Plaintiff generally alleges that Defendants, including Tyco, have designed, manufactured, marketed, distributed, and/or sold AFFF products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors.  (*See* DE 1-1, Compl. ¶¶ 4, 6, 13).  Plaintiff expressly alleges that he "regularly handled, used, and cleaned up AFFF as part of his regular duties" while in the U.S. Navy and suffered injury "caused by exposure to AFFF containing PFOA and/or PFOS" "[a]s a direct results of Defendants' acts" (*id.* ¶¶ 11, 55; *see*

4

*also id.* ¶¶ 1, 10-12, 73). Plaintiff also alleges that he used "Fluorosurfactant Products as directed and intended by the manufacturers" and "used AFFF in accordance with all product instructions and directions" (*id.* ¶¶ 27, 73, 75) and that their use caused Plaintiff's "testicular cancer, hyperthyroid disease, and sterility" (*id.* ¶¶ 74-76).

10.    Plaintiff asserts claims against all Defendants for "strict liability – design defect and/or defective product" (*Id.* ¶¶ 77-84); "strict liability – failure to warn" (*id.* ¶¶ 85-94); and negligence (*id.* ¶¶ 95-98). Plaintiff asserts claims against DuPont and Chemours Co. only for fraudulent transfer (*id.* ¶¶ 99-114). Plaintiff also seeks punitive damages from all Defendants (*id.* ¶ 115).

11.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this action, and a copy is being filed with the Clerk of the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida.

12.    By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

13.    Tyco reserves the right to amend or supplement this Notice of Removal.

5

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

14.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its acts taken pursuant to a federal officer's directions, have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can assert a "colorable" federal defense.  *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

15.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, *3 (S.D.N.Y. Oct.

6

21, 2011) (citations omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)."  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal.  *Isaacson*, 517 F.3d at 136.

16.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's alleged injuries are caused at least in part by MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF.  *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3-6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-

2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3-5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3-6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A.    **MilSpec AFFF**

17.    Since the late 1960s or early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property.  Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted an AFFF-related patent in 1966.[2]  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety[.]"[3]

18.    The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

19.    From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."    All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This

---

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

requirement has been in force for virtually the entire period of time at issue in the Complaint.  And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."[7]   PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

## B.    All The Requirements Of 28 U.S.C. § 1442(a)(1) Are Satisfied

### 1.    *The "Person" Requirement Is Satisfied*

20.    The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute.   For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships[.]" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135-36.

---

[7] *See* MIL-PRF-24385F(SH), Int. Amendment 3, § 6.6 (2019), https://quicksearch.dla.mil/Transient/0DCD47E97A78408D8BFDA2C33BCFBD82.pdf

### 2.    *The "Acting Under" Requirement Is Satisfied*

21.    The second requirement – "acting under" a federal officer – is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

22.    The requirement of "acting under" federal office is met here because Plaintiff's claims, at least in part, challenge Tyco's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated

intermediates and agents to achieve improvements in formulations."[8]  Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF.  *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (same); *see also* MDL Order 1, at 3-6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3-4 (same for AFFF used at Part 139 airport); MDL Order 3, at 3-4 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

23.    In designing, manufacturing and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being

---

[8] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[9]

### 3.   *The Causation Requirement Is Satisfied*

24.    The third requirement, that the defendant's acts taken "under color of federal office" have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action, erects a hurdle that "is quite low." *Isaacson*, 517 F.3d at 137.[10] To satisfy this requirement, it is sufficient for a defendant to establish that an act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties. *Id.* at 137-38.

25.    Here, Plaintiff's claims arise at least in part from the production and sale of AFFF manufactured to military specifications for use at military facilities. Plaintiff alleges that the use of PFAS in AFFF is the source of his injuries. Tyco contends that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco and other manufacturers to meet specifications established by the DoD. Military installations are required to employ MilSpec AFFF. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco could

---

[9] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[10] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5-6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [3M Company, another MilSpec AFFF manufacturer] manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where 3M's AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3, at 5-6 (same as to MilSpec AFFF used at a single airport).

26.    Here, Plaintiff's purported injuries arise at least in part from MilSpec AFFF. The causal connection between Plaintiff's alleged injuries and Tyco's actions under color of federal office thus is clear. It is irrelevant that Plaintiff does not expressly contend that he has been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.    *The "Colorable Federal Defense" Requirement Is Satisfied*

27.    The fourth requirement ("colorable federal defense") is satisfied by

14

Tyco's assertion of the government contractor defense.

28.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original; citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo*, 771 F.3d at 116.[11]   Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants[.]"  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity

---

[11] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original; citation omitted).

29.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

30.    Tyco has satisfied these elements for purposes of removal.    As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.    Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant

demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same); MDL Order 3, at 5 (same); *see also Nessel*, 2021 WL 744683, at *4.

31.    Moreover, for purposes of removal, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[12]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[13]  By no later than 2001, DoD was aware of data

---

[12] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

[13] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires[.]"[14] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[15] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design." (citation omitted)); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the

---

[14] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[15] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

32.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *10, 12-13.

33.    Tyco's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices

dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

34. In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other defendants presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, Tyco hereby removes this action from the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, to this Court.

Dated: July 13, 2023                     Respectfully submitted,

*/s/ Michael D. Sloan*
Michael D. Sloan (FBN 104385)
**CARLTON FIELDS, P.A.**
CityPlace Tower
525 Okeechobee Blvd., Ste. 1200
West Palm Beach, Florida 33401
P: (561) 822-2979
F: (561) 659-7368
Email: msloan@carltonfields.com

*Counsel for Tyco Fire Products, LP and Chemguard, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 13, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that copies of the foregoing **NOTICE OF REMOVAL,** with its Exhibits, were served on all parties on the attached Service List, in the manner specified, on July 13, 2023.

*/s/ Michael D. Sloan*
Michael D. Sloan

**SERVICE LIST**

| | |
|---|---|
| Louise R. Caro<br>COSSICH, SUMICH, PARSIOLA<br>& TAYLOR, LLC<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA 70037<br>lcaro@carolawpa.com<br>*Counsel for Plaintiff*<br><u>Served via E-mail</u> | Scott Summy<br>Carla Burke Pickrel<br>Brett Land<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Ave., Suite 1100<br>Dallas, TX 75219<br>ssummy@baronbudd.com<br>cburkepickrel@baronbudd.com<br>bland@baronbudd.com<br>*Counsel for Plaintiff*<br><u>Served via E-mail</u> |
| David R. Erickson<br>Brent Dwerlkotte<br>SHOOK, HARDY & BACON<br>L.L.P.<br>2555 Grand Blvd.<br>Kansas City, MO 64108<br>Tel: (816) 474-6550<br>derickson@shb.com<br>dbdwerlkotte@shb.com<br>Counsel for Defendants E. I. duPont<br>de Nemours and Company, The<br>Chemours Company, and The<br>Chemours Company FC, LLC<br><u>Served via E-mail</u> | Daniel L. Ring<br>Tyler D. Alfermann<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Tel: (312) 782-0600<br>dring@mayerbrown.com<br>talfermann@mayerbrown.com<br>Counsel for Defendant 3M<br>Company<br><u>Served via E-mail</u> |
| | Kat Hacker<br>BARTLIT BECK LLP<br>1801 Wewatta, Suite 1200<br>Denver, CO 80202<br>Tel: (303) 592-3100<br>dupont@bartlitbeck.com<br>Counsel for Defendants Corteva,<br>Inc. and DuPont de Nemours, Inc.<br><u>Served via E-mail</u> |

| | |
|---|---|
| Jonathan I. Handler<br>Keith H. Bensten<br>DAY PITNEY LLP<br>One Federal Street, 29th Floor<br>Boston, MA 02110<br>Tel: (617) 345-4600<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br>Counsel for Defendants Carrier<br>Global Corporation, Kidde PLC,<br>Inc., Chubb Fire, Ltd., UTC Fire &<br>Security Americas Corporation,<br>Inc., Raytheon Technologies<br>Corporation<br>Served via E-mail | Keith E. Smith<br>GREENBERG TRAURIG, LLP<br>1717 Arch Street, Suite 400<br>Philadelphia, PA 19103<br>Tel: (215) 988-7800<br>smithkei@gtlaw.com<br>Counsel for Defendant National<br>Foam Inc.<br>Served via E-mail |
| Michael L. Carpenter<br>GRAY LAYTON KERSH<br>SOLOMON<br>FURR & SMITH, P.A.<br>516 S. New Hope Road<br>Gastonia, NC 28054<br>Tel: 704-865-4400<br>mcarpenter@gastonlegal.com<br>Counsel for Defendant Buckeye<br>Fire Equipment Company<br>Served via E-mail | Heidi Levine<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 839-5300<br>hlevine@sidley.com<br>Counsel for Defendant Arkema, Inc.<br>Served via E-mail |
| John R. Wellschlager<br>DLA PIPER LLP (US)<br>The Marbury Building<br>6225 Smith Avenue<br>Baltimore, MD 21209<br>Tel: (410) 580-3000<br>john.wellschlager@dlapiper.com<br>Counsel for Defendant BASF<br>Corporation<br>Served via E-mail | Jonathan B. Blakley<br>GORDON REES SCULLY<br>MANSUKHANI, LLP<br>One North Franklin, Suite 800<br>Chicago, IL 60606<br>Tel: (312) 565-1400<br>jblakley@grsm.com<br>Counsel for Defendant ChemDesign<br>Products Inc.<br>Served via E-mail |

| | |
|---|---|
| Melanie Black Dubis<br>Charles E. Raynal IV<br>PARKER POE ADAMS &<br>BERNSTEIN<br>LLP<br>301 Fayetteville Street, Suite 1400<br>Raleigh, NC 27601<br>Tel: (919) 828-0564<br>melaniedubis@parkerpoe.com<br>charlesraynal@parkerpoe.com<br>Counsel for Defendants Archroma<br>U.S., Inc., Archroma Management,<br>LLC, and Clariant Corporation<br><u>Served via E-mail</u> | John F. Parker<br>Oliver E. Twaddell<br>GOLDBERG SEGALLA LLP<br>711 Third Avenue, Suite 1900<br>New York, NY 10017<br>Tel: (646) 292-8700<br>jparker@goldbergsegalla.com<br>otwaddell@goldbergsegalla.com<br>Counsel for Defendant Chemicals<br>Inc.<br><u>Served via E-mail</u> |
| Ethan R. Ware<br>WILLIAMS MULLEN<br>1230 Main Street, Suite 330<br>Columbia, SC 29201<br>Tel: (803) 567-4600<br>eware@williamsmullen.com<br>Counsel for Defendant Nation Ford<br>Chemical Company<br><u>Served via E-mail</u> | Clifford J. Zatz<br>CROWELL & MORING<br>1001 Pennsylvania Avenue, NW<br>Washington, D.C. 20004<br>Tel: (202) 624-2500<br>czatz@crowell.com<br>pcondron@crowell.com<br>Counsel for Defendant AGC<br>Chemicals Americas, Inc. and<br>AGC, Inc.<br><u>Served via E-mail</u> |
| Kurt D. Weaver<br>WOMBLE BOND DICKSON (US)<br>LLP<br>555 Fayetteville Street, Suite 1100<br>Raleigh, NC 27601<br>Tel: (919) 755-2100<br>kurt.weaver@wbd-us.com<br>Counsel for Defendant Deepwater<br>Chemicals, Inc.<br><u>Served via E-mail</u> | Kirk G. Warner<br>Clifton L. Brinson<br>Addie K.S. Ries<br>SMITH, ANDERSON, BLOUNT,<br>DORSETT, MITCHELL &<br>JERNIGAN,<br>LLP.<br>150 Fayetteville Street, Suite 2300<br>Raleigh, North Carolina 27601<br>Tel: (919) 821-1220<br>kwarner@smithlaw.com<br>cbrinson@smithlaw.com<br>aries@smithlaw.com |

| | Counsel for Defendant Dynax Corporation<br>Served via E-mail |
|---|---|
| CENTRAL SPRINKLER, LLC<br>c/o Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801<br>Served via First Class U.S. Mail | FIRE PRODUCTS GP HOLDING, LLC<br>c/o Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801<br>Served via First Class U.S. Mail |
| ANGUS INTERNATIONAL SAFETY<br>GROUP, LTD.<br>c/o Paul Williams, CEO<br>Station Road, High Bentham<br>Near Lancaster, United Kingdom<br>LA2 7NA<br>Served via First Class U.S. Mail | |